IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MAR - 3 2011

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

JOHNATHAN LEE X SMITH,

    Petitioner,

v.                                         Civil Action No. **3:09CV653**

GENE M. JOHNSON,

    Respondent.

## MEMORANDUM OPINION

Johnathan Lee X Smith ("Smith"), a Virginia prisoner proceeding *pro se*, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254.[1] Smith challenges his conviction in the Circuit Court for the City of Williamsburg ("Circuit Court") for breaking and entering with intent to commit larceny[2] and grand larceny. Respondent has moved to dismiss. Smith has replied. The matter is ripe for disposition.

## I. Summary of Smith's Claims and Respondent's Arguments

Smith contends that he is entitled to federal habeas relief upon the following grounds:

Claim 1    The Commonwealth violated Smith's right against self-incrimination when two police officers interviewed him without reading him his *Miranda*[3] rights.

Claim 2    The Commonwealth violated Smith's Fifth Amendment[4] rights by constructively amending his indictment for breaking and entering.

---

[1] Because Smith did not number all of the pages for his Amended § 2254 Petition, the Court employs the page numbers assigned by the Court's CM/ECF docketing system.

[2] In this Memorandum Opinion, this offense is also referred to as statutory burglary by the Court and the parties.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. Const. amend. V.

| | |
|---|---|
| Claim 3 | The indictment for breaking and entering is fatally defective because it does not specify the building which Smith burglarized nor does it contain any allegation of ownership. |
| Claim 4 | The Commonwealth's evidence was insufficient to support the jury verdict that Smith was guilty of statutory burglary as it was charged in the indictment because it does not specify the building at issue. |
| Claim 5 | The Commonwealth's evidence was insufficient to support the statutory burglary conviction. |
| Claim 6 | The Commonwealth's evidence was insufficient to support the jury verdict finding Smith guilty of grand larceny. |
| Claim 7 | The general district court violated Smith's constitutional rights by depriving him of his right to be represented by counsel at his preliminary hearing. |
| Claim 8 | The jury verdicts are contrary to the law and the evidence. |
| Claim 9 | The Commonwealth failed to prove that Smith had waived his constitutional right to be represented by an attorney at the preliminary hearing. |
| Claim 10 | Smith's trial counsel was ineffective for failing to raise a double jeopardy claim with respect to the Smith's grand larceny charge. |
| Claim 11 | Smith's trial counsel was ineffective for failing to preserve the following issues for appeal: <br> (a) The general district court deprived Smith of his right to a preliminary hearing; <br> (b) Two police officers violated Smith's rights against self-incrimination by asking him questions without reading him his rights; and, <br> (c) The breaking and entering indictment was fatally defective. |
| Claim 12 | Smith's trial counsel was ineffective for failing to consult with him regarding the fatally defective indictment. |
| Claim 13 | Smith's appellate counsel was ineffective for failing to raise issues regarding the allegedly defective indictment on appeal. |
| Claim 14 | Section 19.2-231 of the Virginia Code is unconstitutional as applied to Smith. |
| Claim 15 | Smith was deprived of the assistance of counsel because the trial court denied his motion for continuance. |

Respondent asserts, *inter alia*, that: Claims 8 and 14 do not state a basis for federal habeas relief; Claims 4 through 6 and 11 through 13 lack merit; and Smith's remaining claims are procedurally defaulted.

## II.  Procedural History

On October 12, 2005, a jury found Smith guilty of breaking and entering with the intent to commit larceny and grand larceny.  The Circuit Court subsequently sentenced Smith to a total of sixteen years in prison for those charges.  Smith appealed.

### A.    Pertinent Proceeding Before the Court of Appeals of Virginia

On appeal to the Court of Appeals of Virginia, appellate counsel raised a number of issues including the arguments raised in Claims 4, 5, and 6.  *Smith v. Commonwealth*, No. 3009-05-1, at 1-2, 4 (Va. Ct. App. Dec. 15, 2006.)  The Virginia Court of Appeals rejected those claims on the merits.  *Id.*  The Court of Appeals also granted Smith permission to file a *pro se* supplemental petition for appeal.  *Id.* at 5.  The Court of Appeals of Virginia concluded the following claims of error were barred by Smith's failure to make a timely objection as required by Supreme Court of Virginia Rule 5A:18:  (Claim 7) "[Smith] was not represented by counsel during a preliminary hearing," *id.* at 2; (Claim 1)"[Smith's] Fifth Amendment right against self-incrimination was violated when the police questioned him without first reading him his *Miranda* rights and the responses he provided were used against him at trial," *id.* at 5; (Claim 3) "the indictment . . . failed to specify which building he allegedly broke into," *id.*; and "there was a conspiracy of silence between the prosecution, defense counsel, and [the] trial court to convict him on an insufficient indictment."  *Id.* at 7.

3

### B.     Proceedings Before the Supreme Court of Virginia on Direct Appeal

In his petition for appeal before the Supreme Court of Virginia, Smith, by counsel,

claimed he was entitled to relief because:  the evidence was insufficient to support his

convictions (§ 2254 Claims 4 through 6); the Court of Appeals of Virginia erred in concluding

that Smith's challenge to a lack of an attorney at the preliminary hearing was barred by Virginia

Supreme Court Rule 5A:18 (§ 2254 Claim 9); and the Circuit Court abused its discretion in

denying Smith's motion for a continuance.  Petition for Appeal at 1-2, *Smith v. Commonwealth*,

No. 070606 (Va. Sept. 24, 2007).  Smith also sought permission to file *pro se* supplemental

petitions for appeal.  The Supreme Court of Virginia denied Smith's "motion to allow pro se

filing."  Order dated July 3, 2007, *Smith*, No. 070606.  Thereafter, on September 24, 2007, in a

summary order, the Supreme Court of Virginia refused Smith's petition for appeal.  *Smith*, No.

070606.

### C.     Proceedings on State Habeas

On October 15, 2007, Smith filed a petition for a writ of habeas corpus with the Supreme

Court of Virginia wherein he raised numerous claims of ineffective assistance of counsel.  The

Supreme Court of Virginia referred the matter to the Circuit Court to conduct an evidentiary

hearing.  Order dated October 31, 2008, *Smith v. Dir., Dep't Corr.*, No. 072189 (Va. Jan. 4,

2010).  On January 4, 2010, after reviewing the Circuit Court's Findings of Fact and Conclusions

of Law, the transcript of the Circuit Court's evidentiary hearing, and Smith's objections to the

Circuit Court's Findings of Fact and Conclusions of Law, the Supreme Court of Virginia

dismissed Smith's petition for a writ of habeas corpus.  *Smith*, No. 072189, at 13.

### III. Exhaustion and Procedural Default

State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (*quoting Preiser v. Rodriguez*, 411 U.S. 475, 491-92 & n.10 (1973)). The purpose of the exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all "available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (*citing Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (*quoting Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)). Fair presentation demands that "'both the operative facts and the controlling legal principles must be presented to the state court.'" *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (*quoting Matthews*, 105

F.3d at 911). Moreover, "[f]air presentation mandates that the federal claim 'be presented face-up and squarely . . . . Oblique references which hint that a theory may be lurking in the woodwork will not suffice.'" *Id.* (omission in original) (*quoting Matthews*, 105 F.3d at 911). Thus, "the presentation to the state court of a state law claim that is similar to a federal claim does not exhaust the federal claim." *Id.* (*citing Duncan*, 513 U.S. at 366); *see Gray v. Netherland*, 99 F.3d 158, 162-64 (4th Cir. 1996) (concluding petitioner had not fairly presented his legal argument to the state courts). "The burden of proving that a claim has been exhausted lies with the petitioner." *Matthews*, 105 F.3d at 911 (*citing Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (*citing Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (*quoting Coleman*, 501 U.S. at 735 n.1).[5] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a

---

[5] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Matthews*, 105 F.3d at 911 (*citing Sweezy v. Garrison*, 694 F.2d 331, 331 (4th Cir. 1982)).

showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

## A. Defaulted Claims Raised in Appellate Counsel's Brief to the Supreme Court of Virginia on Direct Appeal

In Claims 7 and 9, Smith contends that he is entitled to relief because he was denied his constitutional right to be represented by an attorney at the preliminary hearing. When Smith raised this matter on direct appeal, the Court of Appeals of Virginia found that the claim was barred by Virginia Supreme Court Rule 5:18.[6] *Smith v. Commonwealth*, No. 3009-05-1, at 2-3 (Va. Ct. App. Dec. 15, 2006.) The Court of Appeals of Virginia concluded Smith "objected on these grounds during the sentencing hearing, after a jury had convicted him. Because the objection was not timely, Rule 5A:18 bars our consideration of this issue on appeal." *Id.* at 2. When Smith challenged this ruling on direct appeal to the Supreme Court of Virginia, that court summarily refused his petition for appeal. Because the Supreme Court of Virginia summarily rejected Smith's petition for appeal, it is presumed that it dismissed Claims 7 and 9 for the reasons stated by the Court of Appeals of Virginia. *See White v. Johnson*, No. 2:05cv365, 2006 WL 2520113, at *4 (E.D. Va. Aug. 25, 2006) (*citing Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). "Rule 5A:18 constitutes an adequate and independent ground for denying a claim." *Makdessi v. Watson*, 682 F. Supp. 2d 633, 650 (E.D. Va. 2010) (*citing Clagett v. Angelone*, 209 F.3d 370, 378 (4th Cir. 2000)). Therefore, Claims 7 and 9 are barred from review here unless Smith can demonstrate some basis for excusing his default.

---

[6] "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Va. Sup. Ct. R. 5A:18 (West 2008).

## B. Claims that Could Have Been But Were Not Raised in Counsel's Submissions to the Supreme Court of Virginia on Direct Review

Smith did not properly present Claims 1, 2, and 3 to the Supreme Court of Virginia on direct review. *Reyes v. Kelly,* No. 3:09cv23-HEH, 2009 WL 3109856, at *2 (E.D. Va. Sept. 25, 2009) ("[W]here questions concerning exhaustion arise, the petitioner bears the burden of demonstrating that he properly presented his claim to the state courts in accordance 'with the state's chosen procedural scheme.'" (*quoting Mallory,* 27 F.3d at 995)). To the extent that these claims were contained in Smith's *pro se* submissions to the Supreme Court of Virginia, they were not properly presented because the Supreme Court of Virginia refused Smith's motion to consider his *pro se* submissions. *See Mueller v. Angelone,* 181 F.3d 557, 581-83 (4th Cir. 1999); *Orbe v. True,* 233 F. Supp. 2d 749, 761-63 (E.D. Va. 2002) ("[T]he fact that a state court has been physically presented with the claims in a pleading or motion does not necessarily mean that those claims were properly presented . . . .").

If Smith now sought to exhaust these claims by properly presenting them to the Supreme Court of Virginia, that court would find the claims barred by a variety of state procedural rules including the Supreme Court of Virginia's contemporaneous objection rule,[7] and the rule in

---

[7] That rule provides:

> No ruling of the trial court, disciplinary board, or commission before which the case was initially heard will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and evidence is not sufficient to preserve the issue for appeal.

Va. Sup. Ct. R. 5:25 (Lexis/Nexis 2011). The Court of Appeals of Virginia applied its version of the contemporaneous objection rule to bar consideration of these claims when Smith presented them in his *pro se* pleadings before that court. *Smith,* No. 3009-05-1, at 5-6.

*Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974), because these claims could have been, but were not, properly raised on direct appeal. Both Virginia Supreme Court Rule 5:25 and *Slayton* are adequate and independent state procedural rules when so applied. *See Weeks v. Angelone*, 176 F.3d 249, 269-70 (4th Cir. 1999) (concluding Rule 5:25 is an adequate and independent state procedural rule); *Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997) (concluding *Slayton* is an adequate and independent procedural rule). Therefore, Claims 1, 2, and 3 are procedurally defaulted and barred from review unless Smith can show some basis for excusing his default.

### C. Smith Has Not Demonstrated Any Basis for Considering His Defaulted Claims 1 Through 3, 7 and 9.

Smith contends that the "'exceptional circumstances rule' reaffirmed in *Lee v. Kemna*, . . . require[s] this Court to address" Claims 1, 2, and 3. (Pet'r's Resp. Br. Mot. Dismiss 6, 9, 11.) In *Lee v. Kemna*, 534 U.S. 362 (2002), the Supreme Court observed that "[t]here are . . . exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Id.* at 885 (*citing Davis v. Wechsler*, 263 U.S. 22, 24 (1923)). Smith, however, fails to demonstrate anything exceptional or exorbitant about the application of the relevant procedural bars to his claims. Furthermore, to the extent that Smith asserts the ineffective assistance of counsel constitutes cause sufficient to excuse his default, that assertion is rejected for the reasons set forth in conjunction with the denial of Smith's ineffective assistance of counsel claims. *See infra* Part VI. Accordingly, Claims 1 though 3, 7 and 9 are procedurally defaulted and will be DISMISSED.

### D. Claim 15 Was Found to be Procedurally Barred on State Habeas

In Claim 15, Smith contends that he was denied the Sixth Amendment[8] right to the effective assistance of counsel when the Circuit Court denied his motion for a continuance. Smith framed this claim before the Supreme Court of Virginia as a claim that the Circuit Court had unduly interfered with his right to the effective assistance of counsel by the Circuit Court's failure to grant counsel's motion for a continuance. Therefore, the Supreme Court of Virginia concluded this claim was barred by the rule in *Slayton* because it could have been, but was not, raised on direct appeal. *Smith v. Dir., Dep't Corr.*, No. 072189, at 9 (Va. Jan. 4, 2010). The Virginia courts regularly and consistently apply the rule in *Slayton* to bar this type of Sixth Amendment challenge when raised on habeas. *See Lenz v. True*, 373 F. Supp. 2d 606, 607 (W.D. Va. 2005);[9] *see also Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2006) (upholding *Slayton* bar to claim that counsel were laboring under a conflict of interest). Smith has not demonstrated any basis for excusing his default. Accordingly, Claim 15 is procedurally defaulted and will be DISMISSED.

### E. Respondent's Motion to Dismiss Claim 10 Is Denied

In Claim 10, Smith complains that counsel was deficient for failing to raise a double jeopardy claim with respect to Smith's grand larceny charge. With respect to Claim 10,

---

[8] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

[9] To the extent that Smith's claim could be read to directly challenge counsel's performance as deficient, such claim would not be barred by *Slayton*. *See Lenz v. Washington*, 444 F.3d 295, 302-03 (4th Cir. 2006). In this regard, the closest Smith comes to alleging an ineffective assistance of counsel claim is his complaint that "counsel did not file with the trial court a motion to dismiss the fatally defective warrant and indictment for breaking and entering as he had led Petitioner to believe would be done." (Am. § 2254 Pet. 22.) Such a claim lacks merit for the reasons set forth later in this opinion. *See infra* Part VI.C.

Respondent asserts that this claim was not presented in the state court proceedings and thus is unexhausted and defaulted. (Resp't's Br. Supp. Mot. Dismiss 10.) The record, however, reflects that Smith raised the facts in support of this claim in a Motion for Leave to File Amended Habeas Corpus before the Supreme Court of Virginia. The Supreme Court of Virginia granted Smith's Motion for Leave to File Amended Habeas Corpus: "On October 26, 2007 came the petitioner . . . and filed a motion to amend the petition in this case. Upon consideration whereof, the motion is granted and the amendment is considered filed." Order dated February 13, 2008, *Smith*, No. 072189. Thereafter, when the Supreme Court directed the Circuit Court to conduct an evidentiary hearing, Smith complained that the Circuit Court had failed to include his claim that "[c]ounsel rendered ineffective assistance by failing to timely object to Petitioner's trial on the grand larceny offense on the ground of double jeopardy." Motion for Reconsideration filed November 10, 2008, at 1, *Smith*, No. 072189. The Supreme Court of Virginia denied the motion to reconsider. Order filed January 13, 2009, *Smith*, No. 072189. Thereafter, the Supreme Court did not address the claim in its decision. *Smith*, No. 072189. Respondent does not adequately explain why, under such circumstances, Claim 10 is unexhausted and defaulted. Accordingly, Respondent's motion to dismiss Claim 10 will be DENIED WITHOUT PREJUDICE.

### IV.  Applicable Restraints Upon Federal Habeas Corpus Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, this Court's warrant to grant relief by way of a writ of habeas corpus is circumscribed by 28 U.S.C. § 2254(d) and § 2254(e)(1). Section 2254(e)(1) provides that "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing

evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (*citing* 28 U.S.C. § 2254(e)(1)).[10]

Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any

claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that under the foregoing provisions,

the question "is not whether a federal court believes the state court's determination was incorrect

but whether that determination was unreasonable—a substantially higher threshold." *Schriro v.

Landrigan*, 550 U.S. 465, 473 (2007) (*citing Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## V. Challenges to the Sufficiency of the Evidence

In Claims 4 through 6, Smith contends that the evidence was insufficient to support his

convictions. A federal habeas petitioner is entitled to relief on a challenge to the sufficiency of

the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable

doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting

such a review "is whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *Id.* at 319.

The evidence introduced at trial reflected that on or about September 23, 2004, someone

broke the glass front door to Ed's Miller Mart in James City County. Police responded to the

---

[10] Thus, the findings of the Virginia courts figure prominently in this Court's opinion.

scene and contacted the owner of the store, Atul Patel. When Patel arrived at the store, he found

that the lottery display was missing. Patel explained that he owned the lottery tickets contained

in the display and that the missing tickets were worth roughly $2,000. Patel testified the display

"box belongs to the Lottery Department." (Trial Tr. 56.) The jury also was provided with a

photo from a surveillance camera at Ed's Miller Mart. The photo depicted an individual in a ski

mask, of roughly Smith's size and build, entering Ed's Miller Mart after the store was closed at

the approximate time of the burglary.

Earl Tonnesen, an investigator with the Virginia Lottery testified that "[t]he Virginia

Lottery" owned the display in which the stolen lottery tickets had been housed. (Trial Tr. 66.)

Tonnesen was able to determine the identification number assigned to each of the stolen tickets.

Thereafter, Tonnesen was able to identify the locations and times at which some of the stolen

tickets were cashed. Tonnesen obtained video recordings from the various locations which

depicted Smith cashing some of the stolen lottery tickets.

Tonnesen then placed Smith under surveillance. Tonnesen observed Smith leave his

residence, go into a convenience store, and hand a lottery ticket to the clerk. Tonnesen obtained

the lottery ticket from the clerk. The lottery ticket had been stolen from Ed's Miller Mart.

Tonnesen placed Smith in custody. During the course of that arrest, Tonnesen removed another

lottery ticket from Smith's pocket that had been stolen from Ed's Miller Mart.

Smith was placed in the back seat of a police car. Smith asked Tonnesen what the

charges against him were. Tonnesen advised Smith of the charges. Tonnesen also told Smith

that Tonnesen had videotapes of Smith cashing lottery tickets at different stores. According to

Tonnesen, "[Smith] then asked me what he could do to get out this mess. I advised him that I

had not advised him of his rights and that we could talk about that later down at the police department." (Trial Tr. 93.) Nevertheless, Smith then told Tonnesen that "he could give [Tonnesen] a bail bondsman who was selling drugs as well as a drug dealer coming down from New York selling narcotics" in exchange for not pursuing criminal charges related to lottery tickets. (Trial Tr. 93-94.) Tonnesen asked Smith about the location of any other lottery ticket. Smith told Tonnesen there were more tickets in his apartment, on an end table next to his couch. (Trial Tr. 94.)

Thereafter, at the police station, Tonnesen interviewed Smith. Smith said that he did not want to go to jail and that he could "give [Tonnesen] the bail bondsman." (Trial Tr. 94.)

Investigator Gibbs testified to questioning Smith at the police station. During that questioning, Gibbs asked Smith whether he had committed the burglary and theft of lottery tickets from Ed's Miller Mart. According to Gibbs, Smith stated, "he did not want to go to prison. He also stated that - - . . . . What if I did something bad. I don't want to go to prison for it. Would I be able to pay restitution or something." (Trial Tr. 104.) In response to further questions, Smith "started talking about information that he had regarding drug trafficking in Newport News and also bail bondmen that were acting as fences for stolen property." (Trial Tr. 104.)

The defense put on two witnesses, Michael Cooper and Smith. Cooper testified that he purchased a bag of lottery tickets from "a guy named Bear." (Trial Tr. 117.) Cooper testified that he paid about $200 for the tickets, but gave them to Smith for free. Smith testified that Cooper gave him the bag of lottery tickets and that Smith did not know they were stolen. Smith also acknowledged that he owned a ski mask similar to the one worn by the individual who was

on the video depicting the burglary of Ed's Miller Mart. The jury was not persuaded by the story told by Cooper and Smith.[11]

## A. Breaking and Entering with Intent to Commit Larceny

In Claims 4 and 5, Smith contends that the evidence was insufficient to support the charge of breaking and entering alleged in the indictment.[12] Specifically, Smith contends the evidence was insufficient to demonstrate that the building he broke into was permanently affixed to realty. The Court of Appeals of Virginia aptly summarized Smith's argument and the ample evidence of his guilt.

> The indictment states, in part, that appellant broke into and entered a "building permanently affixed to realty." Appellant claims that the evidence at trial never proved Ed's Miller Mart was permanently affixed to realty. At trial, however, a police investigator testified the store was "a cinder block and glass structure" and that "It sits on the ground." The trial court was not plainly wrong in finding the evidence, when seen in the light most favorable to the Commonwealth, proved the building was permanently affixed to realty.

*Smith v. Commonwealth*, No. 3009-05-1, at 4 (Va. Ct. App. Dec. 15, 2006.) Given that the Court must "consider both circumstantial and direct evidence, and allow the government all reasonable inferences that could be drawn in its favor," the foregoing evidence is more than sufficient to support the conclusion that the building in question was permanently affixed to realty. *United States v. Harvey*, 532 F.3d 326, 333 (4th Cir. 2008) (*citing United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982)). Accordingly, Claims 4 and 5 will be

---

[11] Cooper acknowledged that he had somewhere between fifteen and seventeen felony convictions. Smith acknowledged that he had six or seven felony convictions.

[12] The indictment here charged Smith with breaking and entering a building with intent to commit larceny in violation of section 18.2-91 of the Code of Virginia. (Circuit Court Rec. 1.) "If any person commits any of the acts mentioned in § 18.2-90 with intent to commit larceny . . . he shall be guilty of statutory burglary . . . ." Virginia Code Ann. § 18.2-91 (West 2004). The pertinent "acts mentioned in Code § 18.2-90" are entering in the nighttime without breaking, or breaking and entering at any time, "any building permanently affixed to realty." Virginia Code Ann. § 18.2-90 (West 2004).

*Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982)). Accordingly, Claims 4 and 5 will be DISMISSED.

## B.    Grand Larceny

In Claim 6, Smith contends that the evidence was insufficient to convict him of grand larceny as charged in the indictment. The indictment charged, in pertinent part, that Smith, "[o]n or about the 23rd day of September, 2004, did steal lottery tickets and [a] lottery ticket dispenser, having a value of two hundred dollars ($200) or more, belonging to Atul D. Patel and the Commonwealth of Virginia, in violation of § 18.2-95 of the Code of Virginia (1950) as amended." (Circuit Court R. at 4.) Smith contends that the evidence was insufficient to support his conviction for grand larceny as charged in the indictment because:

> The record evidence shows, however, that the stolen lottery tickets belonged to a man named "Atul Patel" individually (T.Tr. page 5). There was no evidence introduced to establish that the lottery tickets belonged [to] Atul D. Patel as specifically charged in the indictment. The evidence also proved that the lottery ticket dispenser belonged to the "Lottery Department" (T.Tr. page 56) and to the "Virginia Lottery" (T.Tr. Page 66). There was no evidence presented to establish that the lottery tickets and the lottery ticket dispenser belonged to "Atul **D.** Patel and the Commonwealth of Virginia" as specifically alleged on the face of the indictment.

(Pet'r's Resp. Br. Mot. Dismiss 15-16.) The Virginia courts reasonably rejected Smith's claim that the evidence was insufficient because there was "a 'fatal variance' between the indictment and the evidence at trial as to the ownership of the stolen items." *Smith*, No. 3009-05-1, at 4-5. "The evidence proved Patel owned the lottery tickets and the Commonwealth, via the Virginia Lottery, owned the ticket dispenser." *Id.* at 5. It was abundantly reasonable for the jury to conclude that Atul Patel, who claimed ownership of the lottery tickets at trial, was the same individual named in the indictment and that the Virginia Lottery was an arm of the

Commonwealth of Virginia. *See Harvey*, 532 F.3d at 333 (*citing Tresvant*, 677 F.2d at 1021);

*see Davidson v. Boles*, 266 F. Supp. 645, 649 (N.D. W. Va. 1967) (concluding inconsequential

misspelling of victim's name in the indictment did not constitute a fatal variance.) Claim 6 will

be DISMISSED.

## VI.  Alleged Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that to

demonstrate the ineffective assistance of counsel, a defendant first must show that counsel's

representation was deficient and then must establish that the deficient performance prejudiced the

defense. *See id.* at 687.  To satisfy the deficient performance facet of *Strickland*, the defendant

must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide

range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir.

2001) (*quoting Strickland*, 466 U.S. at 689).  Prejudice requires a defendant to "show that there is

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Strickland*, 466 U.S. at 694.  Furthermore, in analyzing ineffective

assistance of counsel claims, it is not necessary to determine whether counsel's performance was

deficient if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A.    Lack of Counsel at the Preliminary Hearing

In Claim 11, Smith faults trial counsel for failing to properly preserve a number of issues

for appeal.  In Claim 11(a), Smith complains that counsel failed to preserve for appeal the fact

that "the General District Court violated Petitioner's constitutional rights by arbitrarily depriving

him of his right to be represented by counsel at Petitioner's preliminary hearing." (Pet'r's Resp.

Br. Mot. Dismiss 19.) The Circuit Court made the following findings and conclusions of law

with respect to this claim:

> It appears from the record that petitioner had three different counsel appointed to represent him in the General District Court. (T. Tr. 14.) It does appear, however, that petitioner did not have any counsel during the preliminary hearing as all three appointed attorneys had been allowed to withdraw. (H. Tr. 45.)
>
> In Virginia a preliminary hearing is procedural and not jurisdictional. *Snyder v. Commonwealth*, 202 Va. 1009 (1961). In the absence of a showing that anything that occurred in the General District Court was used against him in the Circuit Court, or that any substantive rights were forfeited by not having the assistance of counsel before he was brought before the Circuit Court, petitioner cannot establish a violation of any constitutional right. *Peyton v. Ellyson*, 207 Va. 423 (1966). The Court concludes that petitioner has failed to prove any prejudice from not having an attorney at the preliminary hearing. The Court further concludes that any error in not having an attorney was harmless beyond a reasonable doubt. *See also Pearson v. Commonwealth*, 221 Va. 936 (1981).

Finding of Fact & Conclusion of Law filed February 20, 2009, at 12, *Smith v. Dir., Dep't Corr.*,

No. 072189 (Va. Jan. 4, 2010).[13] The Supreme Court of Virginia largely adopted these findings

and concluded:

> The record . . . demonstrates that petitioner failed to demonstrate that anything occurred in the general district court that was used against him in circuit court, or that he forfeited any substantive rights by not having the assistance of counsel at the preliminary hearing. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*Smith v. Dir., Dep't Corr.*, No. 072189, at 10 (Va. Jan. 4, 2010). The record does not show any

prejudice flowing from the absence of counsel at his preliminary hearing. Accordingly, Smith

fails to demonstrate that the Supreme Court of Virginia's dismissal of this claim for lack of

prejudice was unreasonable. *See* 28 U.S.C. § 2254(d); *Patterson v. Dir., Dep't Corr.*, No.

---

[13] The Court has corrected the spacing in the quotations to the Finding of Fact and Conclusion of Law.

7:07CV00589, 2008 WL 544708, at *4-5 (W.D. Va. Feb. 28, 2008) (rejecting similar claim for

lack of prejudice); *Miller v. Johnson*, No. 7:06-cv-00611, 2007 WL 1725617, at *17 (W.D. Va.

June 12, 2007); *see also Takacs v. Engle*, 768 F.2d 122, 124 (6th Cir. 1985). Claim 11(a) will be

DISMISSED.

## B.     Alleged Violation of Smith's Rights Under *Miranda*

In Claim 11(b), Smith faults counsel for failing to preserve his claim that "Virginia

Lottery Investigator Tonnesen and James City County Policeman Gib[b]s violated Petitioner's

Fifth Amendment right against self-incrimination when they questioned him without having first

advised Petitioner of his Miranda rights and used his responses against him at the jury trial."

(Am. § 2254 Pet. 19). The Circuit Court made the following proposed findings with respect to

this claim:

> When petitioner was arrested he asked what he was charged with and
> Investigator Tonnesen advised him of the charges. Investigator Tonnesen then
> advised the petitioner that he had not been advised of his rights and that they could
> discuss the matter later at the police department. (T. Tr. 93). The petitioner then
> volunteered that "he could give me a bail bondsman who was selling drugs as well
> as a drug dealer coming down from New York selling narcotics, and that he didn't
> want to go to jail." (T. Tr. 93, 94).
>
> It is clear from this evidence that petitioner was in custody at the time of these
> statements, and it is equally clear that petitioner's statements were not the result of
> interrogation. The Investigator told petitioner he had not been advised of his rights,
> but would discuss the mater later at the police department. Nevertheless, petitioner
> volunteered these statements. *Miranda* applies in circumstances where both custody
> *and* interrogation are present. Accordingly, the Court concludes that these statements
> of petitioner were admissible in the absence of *Miranda* warnings.
>
> There were, however, other statements by petitioner, which were the result
> of interrogation, and were inadmissible. (T. Tr. 94, 103-104). Again in these
> statements petitioner reiterated that he didn't want to go to[] jail and that he could
> give the police a bail bondsman. (T. Tr. 94, 103-104). The essence of these
> inadmissible statements was the same as the statements petitioner had previously
> voluntarily given, and was merely cumulative of the admissible evidence.

> . . . In this case, considering that petitioner was arrested in possession of two of the stolen lottery tickets shortly after the break-in, and that the inadmissible statements were basically cumulative of petitioner's admissible statements, the Court concludes that the admission of the inadmissible statements [was] harmless beyond a reasonable doubt.

Finding of Fact & Conclusion of Law filed February 20, 2009, at 5-6, *Smith*, No. 072189.

Thereafter, the Supreme Court of Virginia concluded that:

> The record, including the circuit court's findings of fact and conclusions of law, demonstrates that although some of petitioner's statements may have been inadmissible, the substance of those statements was the same as the substance of and were merely cumulative of admissible statements that petitioner had previously given voluntarily. Counsel was not unreasonable for failing to make an objection where any error in admitting the statements was harmless. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*Smith v. Dir., Dep't Corr.*, No. 072189, at 10-11 (Va. Jan. 4, 2010). Smith fails to demonstrate

that the Supreme Court of Virginia's rejection of this claim was unreasonable. *See Rhode Island*

*v. Innis*, 446 U.S. 291, 301-03 (1980) (holding that volunteered statements are not the product of

interrogation and therefore are not barred by the Fifth Amendment).[14] Given the ample evidence

of Smith's guilt, he cannot demonstrate prejudice. Accordingly, Claim 11(b) will be

DISMISSED.

---

[14] The fact that at the time of his arrest Tonnesen told Smith he had videotapes of Smith cashing lottery tickets at different stores does not alter this Court's conclusion that the Supreme Court of Virginia's decision to reject this claim was reasonable. *See United States v. Payne*, 954 F.2d 199, 202 (4th Cir. 1992) ("[T]he *Innis* definition of interrogation is not so broad as to capture within *Miranda*'s reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges.").

## C.    Challenges to the Statutory Burglary Indictment

In Claims 11(c) and 12, Smith contends that he was denied the effective assistance of counsel because counsel failed to challenge the indictment on the ground that it did not specify the specific building that was the subject of the statutory burglary charge. In Virginia, "[t]he purpose of an indictment is to give the accused notice of the nature and character of the offense charged." *Cantwell v. Commonwealth*, 347 S.E.2d 523, 524 (Va. Ct. App. 1986) (*citing Hairston v. Commonwealth*, 343 S.E.2d 355, 357 (Va. Ct. App. 1986)). "[T]he indictment gave petitioner notice of the nature and character of the offense charged. Although it did not specify the location of the offense, trial counsel was aware of the location, and at the time of trial the court asked the parties to identify the location of the offense on the record." *Smith v. Dir., Dep't Corr.*, No. 072189, at 12 (Va. Jan. 4, 2010). Smith fails to offer any persuasive argument that the indictment was fatally defective because it omitted the exact location of the building.

Moreover, Smith fails to demonstrate that, had counsel made a timely objection, it would somehow have resulted in his acquittal, rather than merely a correction of the omitted information. *See* Va. Code Ann. 19.2-231 ("If there be any defect in form in any indictment . . . the court may permit amendment of such indictment . . . at any time before the jury returns a verdict or the court finds the accused guilty or not guilty . . . ."; *Dotson v. Commonwealth*, No. 1410-02-2, 2003 WL 22386794, at *1 n.1 (Va. Ct. App. Oct. 21, 2003) ("'Amendments which correct defects . . . in the location . . . of the offense are liberally allowed.'" (omissions in original) (*quoting* Ronald J. Bacigal, *Virginia Criminal Procedure* § 13-7, at 268 (4th ed. 1999))). Given these circumstances, Smith fails to demonstrate that counsel's failure to make the objection he urges here was deficient or prejudicial. Accordingly, Claims 11(c) and 12 will be DISMISSED.

21

In Claim 13, Smith also contends that appellate counsel was deficient for "failing to raise before the Supreme Court of Virginia his claim that the Commonwealth violated the Fifth Amendment's Grand Jury Clause by constructively amending the indictment for breaking and entering by presenting evidence to [prove] the break-in at Ed's Miller Mart." (Am. § 2254 Pet. 20.) The Fifth Amendment's grand jury clause has never been extended to the states. *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972) ("Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury."). "Since a state is constitutionally free to dispense with the grand jury indictment altogether and may proceed on a prosecutor's information if it so chooses, the legality of an amendment to an indictment is primarily a matter of state law." *United States ex rel. Wojtycha v. Hopkins*, 517 F.2d 420, 425 (3d Cir. 1975) (internal citation omitted). Virginia courts liberally allow amendments, "provided that the amendment does not change the nature or character of the offense charged." *Cantwell*, 347 S.E.2d at 524 (*citing* Va. Code Ann. § 19.2-231).

Here, the Circuit Court concluded:

[T]he indictment although inartfully drawn, gave the petitioner notice of the nature and character of the offense charged. The complaint for the warrant, a copy of which petitioner had before trial, clearly set out the name and address of the place broken into. Additionally, at the time of the trial the trial court inquired into what were the premises that were broken into .(T. Tr. 22). More importantly, the trial counsel was aware of the location of the offense (H. Tr. 75), and the fact the location of the offense was not in the indictment had no negative impact on his ability to defend the petitioner. (H. Tr. 75.)

The trial court is permitted to amend an indictment provided the amendment does not change the nature or character of the offense. *Cantwell v. Commonwealth*, [347 S.E.2d 523 (Va. Ct. App. 1986)]. *See* § 19.2-231 of the Code of Virginia. The Court concludes that when the trial court asked the identi[ty] of the place broken into (T. tr. 22) [sic], this had the effect of amending the indictment. The Court further

finds that such amendment did not change the nature or character of the offense charged.

Finding of Fact & Conclusion of Law filed February 20, 2009, at 7, *Smith*, No. 072189.

The Supreme Court of Virginia did not specifically adopt the Circuit Court's conclusion that the indictment was constructively amended when the trial court asked the prosecution to identify the building that was the subject of the statutory burglary charge. *Smith v. Dir., Dep't Corr.*, No. 072189, at 12-13 (Va. Jan. 4, 2010). Nevertheless, the Supreme Court of Virginia concluded that counsel reasonably eschewed pursuing any challenge based upon a constructive amendment because "the indictment gave petitioner notice of the nature and character of the offense charged. Although it did not specify the location of the offense, trial counsel was aware of the location, and at the time of trial the court asked the parties to identify the location of the offense." *Id.* at 12. Furthermore, the Supreme Court of Virginia concluded there was no reasonable probability of a different result had counsel raised the matter on appeal. *Id.* at 13. The Supreme Court of Virginia's conclusion that Smith's challenge to the amendment of the indictment lacked merit is fatal to Smith's current claim of ineffective assistance of counsel. *See Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) (reversing district court's "misguided" conclusion that it could determine state court had incorrectly decided state law evidentiary issue in granting relief upon an ineffective assistance of counsel claim); *Hopkins*, 517 F.2d at 425. Accordingly, Claim 13 will be DISMISSED because Smith has not demonstrated deficiency or prejudice.

In Claim 14, Smith contends that "[Virginia] Code 19.2-231 is unconstitutional as applied to Petitioner because . . . [during the evidentiary hearing] Judge Kulp relied upon Code § 19.2-

23

231 to find that the charging part of the indictment for breaking and entering could be constructively amended by the prosecutor during the trial." (Am. § 2254 Pet. 21.) Smith does not raise this claim as a claim of ineffective assistance of counsel. Rather, he contends that such actions violated his rights under the "Fifth [A]mendment's Grand Jury Clause." (*Id.* at 22.) As explained above, the Fifth Amendment's requirements with respect to a grand jury do not apply to the states. *See Alexander*, 405 U.S. at 633. To the extent Smith contends that the Circuit Court sitting in habeas wrongly applied Virginia law, he has not pled a viable basis for federal habeas corpus relief. *See Sharpe*, 593 F.3d at 383 ("It is beyond the mandate of federal habeas courts, however, to correct the interpretation by state courts of a state's own laws." (*citing Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir.), *cert. denied*, 129 S. Ct. 763 (2008))). Because Smith has not pled a violation of his federal constitutional rights, Claim 14 will be DISMISSED.

## VII. Claim 8 and Conclusion

Claim 8 is entirely conclusory. In his Amended § 2254 Petition, the sum of Smith's statement of that claim is as follows: "The jury's verdicts are contrary to the law and evidence." (Am. § 2254 Pet. 18.) The only additional explanation Smith provides for this claim is the direction to "See Grounds 1-6 above." (Pet'r's Resp. Br. Mot. Dismiss 17.) Such a "'vague, conclusory'" claim is subject summary dismissal. *Tucker v. Dixon*, No. 95-7372, 1996 WL 417710, at *1 (4th Cir. July 26, 1996) (*quoting Raines v. United States*, 423 F.2d 526, 531 (4th Cir. 1970)). Accordingly, Claim 8 will be DISMISSED.

Respondent's motion to dismiss (Docket No. 15) will be GRANTED IN PART AND DENIED IN PART. Claims 1 through 9 and 11 through 15 will be DISMISSED. Respondent

will be DIRECTED to file a further response to Claim 10, which must address the merits of

Claim 10, within forty-five (45) days of the date of entry hereof.

An appropriate Order shall issue.

Date: 3-3-11
Richmond, Virginia

/s/
James R. Spencer
Chief United States District Judge